IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GWINDELYNE DENISE DOUGLAS,   :
                             :
        Plaintiff,       :    CIVIL ACTION
                             :    FILE NO. 1:03-CV-2538-CC
v.                          :
                             :
FOUNDATION FUNDING GROUP,   :
INC., and WASHINGTON MUTUAL  :
BANK, FA,                  :
                             :
        Defendants.      :

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

### I.
### Introduction

This is an action brought under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., by Plaintiff, Gwindelyne Denise Douglas, against Defendants, Foundation Funding Group, Inc. ("FFG") and Washington Mutual Bank, FA ("Washington Mutual"),[1] to rescind a credit transaction, to recover damages, and for equitable relief. This matter is before the Court on Washington Mutual's Motion for Summary Judgment [Doc. No. 30]. For the reasons stated herein, Washington Mutual's motion should be **DENIED**.

---

[1]Plaintiff has voluntarily dismissed, without prejudice, all claims against FFG. [Doc. No. 11].

AO 72A
(Rev.8/82)

**II.**
 **Plaintiff's Claims for Relief and the Parties' Contentions**

In the amended complaint, Plaintiff seeks rescission and damages based on several alleged violations of TILA (15 U.S.C. § 1635) and Regulation Z (12 C.F.R. § 226.23). [Doc. No. 15 at 3-5]. Plaintiff further seeks equitable relief, pursuant to TILA and Regulation Z, to prevent Washington Mutual from foreclosing on Plaintiff's house. [Doc. 15 at 5].

In its motion for summary judgment, Washington Mutual contends that the Truth-in-Lending disclosures made in connection with Plaintiff's loan transaction correctly disclosed the annual percentage rate, the finance charge, the amount financed, and the payment schedule. Next, Washington Mutual contends that it gave proper notice to Plaintiff of her right to rescind the transaction. Third, Washington Mutual contends that FFG provided Plaintiff with special disclosures in compliance with 15 U.S.C. § 1639. Fourth, Defendant contends that Plaintiff acknowledged by her signature, dated August 26, 2000, that she received copies of both the Truth-in-Lending disclosures and the notice of the right to rescind the transaction ("right-to-cancel notice"). Finally, Defendant asserts that Plaintiff failed to exercise her right of rescission in the time allowed. Accordingly, Defendant asserts that Plaintiff is not entitled to rescission, damages, or equitable relief.

In her response, Plaintiff contends that Defendant violated TILA by improper disclosure of the payment schedule and the total

2

payment amount.   Plaintiff contends that she was not given a special disclosure that met the requirements of 15 U.S.C. § 1639 and 12 C.F.R. § 32(c).  Even if she had been given such a special disclosure, Plaintiff contends that she did not receive it three business days in advance of the transaction.  Finally, Plaintiff contends that she was not given proper notice of her right of rescission.   Plaintiff asserts that any of the foregoing TILA violations would independently extend the time within which she could rescind the subject loan transaction.   Even without such extension, Plaintiff asserts that she effectively rescinded the transaction with a timely rescission demand made within the original time period for rescission.


### III.
### The Standard of Review on Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998). A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).   The substantive law applicable to the case determines which facts are material. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of showing the court "the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Four Parcels</u>, 941 F.2d at 1437 (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). If the moving party fails to discharge this initial burden, then the motion must be denied. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991)).

When the non-moving party has the burden of proof at trial, the moving party may discharge its initial burden by "showing . . . the district court . . . that there is an absence of evidence to support the non-moving party's case." <u>Celotex</u>, 477 U.S. at 325 (internal quotes omitted); <u>accord</u> <u>Four Parcels</u>, 941 F.2d at 1437-38. Once this burden is met, the non-moving party must then "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

## IV.
### Factual Background

When evaluating the merits of a motion for summary judgment, the Court must view the evidence and factual inferences in a light most favorable to the non-moving party. <u>Frederick v.</u>

AO 72A
(Rev.8/82)

Sprint/United Mgt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001); Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 920 (11th Cir. 1993).  Applying the above legal standard, the Court derives the following facts from the parties' statements of facts and from the record as a whole:[2]

In the summer of 2000, Plaintiff decided to refinance the loan on her house located at 408 Rosewood Circle, Jonesboro, Georgia, 30238.  (Deposition of Plaintiff ("Pl. Dep") at 5-7). Plaintiff completed a loan application with Greatstone Mortgage and received approval for a loan issued by FFG.  [Doc. No. 30](Ex. A at 78-85).  Philip Johns, the closing attorney, testified that Plaintiff and her ex-husband, Noel Douglas, signed the documents necessary to close the loan transaction on August 26, 2000, at the law offices of Johns and Johns located in Douglasville, Georgia.  (Affidavit of Philip Johns ("Johns Aff.") at ¶ 4).  Mr. Johns testified that he served as the notary on many of the documents signed in Plaintiff's loan file.  [Johns Aff. at ¶ 4).

The  Truth-In-Lending  disclosure  document  reflects Plaintiff's and Mr. Douglas' signature, along with the hand-written date, August 26, 2000. [Doc. No. 30](Ex. A at 106-108). The Truth-in-Lending disclosure includes the following terms: (1) an annual percentage rate ("APR") of 9.176%; (2) a finance charge

---

[2] Unless otherwise noted, this overview is derived from those facts in Defendant's statement of material facts ("Def. SMF.") not disputed by Plaintiff.

AO 72A
(Rev.8/82)

of $247,235.89; (3) the amount financed as $129,089.15; (4) the total amount of payments as $376,325.04; (5) the payment schedule consisting of 360 payments –– $1,064.19 to $1,008.41, beginning on October 1, 2000; and (6) a separate itemization of the amount financed. [Doc. No. 30](Ex. A at 106-107).

Plaintiff's loan file also contains a right-to-cancel notice, which reflects Plaintiff's signature and the date August 26, 2000. [Doc. No. 30](Ex. A at 21). This notice instructed Plaintiff in regular type, as follows:

> You are entering into a transaction that will result in a mortgage on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE (3) BUSINESS DAYS from whichever of the following events occurs last:
>
> (1)   the date of the transaction, which is AUGUST 26TH, 2000; or
> (2)   the date you received your Truth-in-Lending disclosures; or
> (3)   the date you received this notice of your right to cancel.

[Doc. No. 30](Ex. A at 21). The right-to-cancel notice specifically instructed Plaintiff that she may cancel the loan transaction by notifying the lender in writing no later than either midnight of August 30, 2000, or the midnight of the third business day following the latest of the three events described above. [Doc. No. 30](Ex. A at 21).

Next, Plaintiff's loan file contained a "Section 32 Mortgage Loan Disclosure." This disclosure reflects Plaintiff and Mr. Douglas' signatures and the date August 26, 2000. [Doc. No. 30](Ex. A at 20). In signing this disclosure, Plaintiff and her

AO 72A
(Rev.8/82)

ex-husband acknowledged having received it at least three days before the closing. [Doc. No. 30](Ex. A at 20).  The Section 32 disclosure instructed Plaintiff as follows:

> YOU ARE NOT REQUIRED TO COMPLETE THIS AGREEMENT MERELY BECAUSE YOU HAVE RECEIVED THE DISCLOSURES OR HAVE SIGNED A LOAN APPLICATION.  IF YOU OBTAIN THIS LOAN, THE LENDER WILL HAVE A MORTGAGE ON YOUR HOME.  YOU COULD LOSE YOUR HOME AND ANY MONEY YOU HAVE PUT INTO IT IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THE LOAN.

[Doc. No. 30](Ex. A at 20).  Finally, this form disclosed the amount of Plaintiff's annual percentage rate as 9.176% and the amount of his monthly payment as $1,005.82. [Doc. No. 30](Ex. A at 20).

The record further reflects that Plaintiff and her ex-husband signed a document entitled "Certificate (That Customer Does Not Rescind Transaction)" ("Certificate") alongside the pre-printed date of August 31, 2000.  [Doc. No. 30](Ex. F).  In connection therewith, Plaintiff and her ex-husband certified that they entered into a loan transaction on August 26, 2000. [Doc. No. 30](Ex. F).  The Certificate further provided that more than three business days had elapsed since Plaintiff received the right-to-cancel notice and other Truth-in-Lending disclosures concerning the subject transaction.  [Doc. No. 30](Ex. F).

Contrary to Mr. Johns' testimony and the dates contained in the loan documents, Plaintiff has testified that the closing date was changed to August 31, 2000, due to the fact that Mr. Douglas traveled out of town on business on August 26, 2000.  (Pl. Dep. at 41, 43, 52, 53).  Plaintiff has submitted a copy of a Driver's

7

Trip Record showing that Mr. Douglas was traveling to Tennessee on August 26, 2000. [Doc. No. 38](Ex. G). Plaintiff noticed that the loan documents were dated August 26, 2000, and not August 31, 2000, and she testified that the closing attorney instructed her to use that date (August 26, 2000) when entering the date next to her signature. (Pl. Dep. at 42, 53-55). Plaintiff further testified that prior to the time of the closing, she had received no documents concerning the loan transaction. (Pl. Dep. at 61-62).

Within three business days of August 31, 2000, Plaintiff returned to the closing attorney's office with the Notice of Right to Cancel in order to get the date changed to August 31, 2000, so that she may cancel the transaction. (Pl. Dep. at 47-50, 64). Plaintiff testified that she was told she could not cancel the transaction without Mr. Douglas' signature. (Pl. Dep. at 51).

Following the closing, FFG assigned its interest in the subject transaction to Bank United of Texas. Bank United of Texas subsequently merged into Washington Mutual on February 13, 2001. Plaintiff acknowledges that she mailed her rescission demand letter to Washington Mutual on August 25, 2003. [Doc. No. 38](Brief at 2).

**V.**
**Discussion**

**A.   The Law in General**

Congress designed TILA to promote the informed use and awareness of the cost of credit by consumers.  15 U.S.C. § 1601; <u>Rodash v. AIB Mortgage Co.</u>, 16 F.3d 1142, 1144 (11th Cir. 1994); <u>Shroder v. Suburban Coastal Corp.</u>, 729 F.2d 1371, 1380 (11th Cir. 1984) (citing <u>Smith v. Chapman</u>, 614 F.2d 968, 971 (5th Cir. 1980)).  "TILA is a remedial statute, and, hence, is liberally construed in favor of borrowers." <u>Dixon v. S & S Loan Service of Waycross, Inc.</u>, 754 F. Supp. 1567, 1570 (S.D. Ga. 1990); <u>see also</u> <u>Ellis v. GMAC</u>, 160 F.3d 703, 707 (11th Cir. 1998).

TILA requires that certain disclosures be made in loan transactions.  <u>See</u> 15 U.S.C. § 1638; 12 C.F.R. §§ 226.17 and 18.  Liability is imposed under 15 U.S.C. § 1640(a) on any creditor who fails to comply with the requirements imposed under Part B of TILA relating to credit transactions.   In keeping with the standard of strict compliance, "[l]iability will flow from even minute deviations from the requirements of the statute and Regulation Z." <u>Shroder</u>, 729 F.2d at 1380 (citing <u>Smith</u>, 614 F.2d at 972; <u>Charles v. Krauss Co.</u>, 572 F.2d 544 (5th Cir. 1978)).  On the other hand, Congress has indicated its intent that courts not adopt a hyper-technical reading of any part of TILA.  <u>Smith v. Highland Bank</u>, 108 F.3d 1325 (11th Cir. 1997).

Section 1640(a) provides for actual damages and certain statutory penalties.  Section 1635 provides for a right of

rescission in any consumer credit transaction in which a security interest will be obtained or acquired in any property used as the principal dwelling of the person to whom credit is extended.  In such a transaction, the obligor is granted the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under that section, including a statement containing the material disclosures required under this subchapter of the TILA, whichever is later. 15 U.S.C. § 1635(a).

If the right to rescind is exercised under 1635(a), the obligor is then not liable for any finance charges, and any security interest "becomes void upon such a rescission."  15 U.S.C. § 1635(b).  The creditor must also return to the obligor any money or property used as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

Section 1635(f) provides that if the required notice or other material disclosures are not delivered, the right to rescind will expire three years after consummation, upon transfer of all the consumer's interest in the property, or upon sale of property, whichever occurs first.  See 12 C.F.R. § 226.23(a)(3); Smith, 108 F.3d 1325; Rodash, 16 F.3d at 1145; Shepeard v.

Quality Siding & Window Factory, Inc., 730 F. Supp. 1295, 1302 (D. Del. 1990).

In this case, it is undisputed that the subject transaction falls under the special provisions of the Home Ownership and Equity Protection Act ("HOEPA"), enacted in 1994 as an amendment to TILA.  Pub.L. 103-325 (amending TILA at 15 U.S.C. §§ 1601-02, 1604, 1610, 1639-41, 48).  HOEPA requires lenders to provide greater disclosures to borrowers involved in high cost loans and to stop the use of certain loan terms and practices.  15 U.S.C. § 1639(a)(1); 12 C.F.R. § 226.31-.32.

The failure to deliver material disclosures -- defined as "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule and the [HOEPA] disclosures and limitations" -- extends the three-day period to rescind to three years.  12 C.F.R. § 226.23(a)(3).[3]  Indeed, "[t]echnical or minor violations of TILA or [Regulation] Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind.

---

[3]TILA provides a cause of action against creditors and assignees of creditors who engage in predatory lending tactics. See Cooper v. First Government Mortgage and Investors Corp., 238 F.Supp.2d 50, 55 (D.D.C. 2002).  While certain circumstances may limit the assignee liability for HOEPA and non-HOEPA loans, Washington Mutual makes no argument to contest its civil liability as an assignee.  Moreover, the right of rescission is not limited by any liability provision, and a consumer who has a right to rescind under § 1635 may rescind against any assignee.  15 U.S.C. § 1641(c); Brodo v. Bankers Trust Co., 847 F. Supp. 353, 359 (E.D. Pa. 1994).

AO 72A
(Rev.8/82)

Semar v. Platte Valley Federal Savings & Loan Association, 791 F.2d 699, 704 (9th Cir. 1986).

**B.   Was the Truth-in-Lending Disclosure of the Schedule and the Total Payments Defective?**

In its summary judgment motion, Washington Mutual contends that the Truth-in-Lending disclosure complied with 12 C.F.R. §§ 226.17 & 226.18 by including the following terms: (1) an APR of 9.176%; (2) a finance charge of $247,235.89; (3) the amount financed as $129,089.15; (4) the total amount of payments as $376,325.04; (5) a payment schedule consisting of 360 payments -- $1,064.19 to $1,008.41, beginning on October 1, 2000; and (6) a separate itemization of the amount financed. [Doc. No. 30](Ex. A at 106-107).

In response, Plaintiff does not challenge the disclosure of the APR, finance charge, the amount financed, or the itemization of the amounts financed.  Rather, Plaintiff argues that the Truth-in-Lending disclosure of the range of monthly payments from $1,064.19 to $1,008.41 is inaccurate.  Plaintiff cites the fact that the final payment in the range is $1,001.44 and not $1,008.41. [Doc. No. 38](Exs. C and D).  Plaintiff further argues that the Truth-in Lending disclosure of $376,325.04, the total of payments, is inaccurate.   Plaintiff points to evidence establishing the total of payments at $376,317.47.  [Doc. No. 38](Exs. C and D).   Plaintiff contends that no "tolerance" exists for inaccuracies as to the payment schedule or the total of payment disclosures.

AO 72A
(Rev.8/82)

Generally, TILA requires creditors to disclose the finance charge as well as various other terms of a credit transaction. See 15 U.S.C. § 1638(a)(3)-(6); 12 C.F.R. § 226.23(a)(3).  TILA allows tolerances for accuracy in closed-end credit transactions with respect to "the disclosure of the finance charge and other disclosures affected by any finance charge."   15 U.S.C. § 1605(f).  Specifically, under the "safe harbor" provision of § 1605(f)(1)(B), "'the finance charge and all disclosures affected by the finance charge are deemed accurate <u>if the disclosure error produces a finance charge which exceeds the actual finance charge</u>.'" <u>Alicea v. Citifinancial Services, Inc.</u>, 210 F.Supp.2d 4, 7 (D.Mass. 2002)(quoting <u>Vandenbroeck v. Commonpoint Mort. Co.</u>, 22 F.Supp.2d 677, 687-88 (W.D. 1998)) (emphasis in original).

In addition to the disclosure of the finance charge, TILA requires the disclosure of the payment schedule and the total of payments.  15 U.S.C. § 1638(a)(5) and (6); 12 C.F.R. § 226.18(g) and (h).  While allowing tolerances for accuracy as to the disclosure of the finance charge and those disclosures affected by the finance charge, there is no regulatory or statutory tolerance with respect to the disclosure of the payment schedule or the total of payments.  See <u>Vandenbroeck v. Commonpoint Mortgage Co.</u>, 22 F.Supp.2d 677, 688 (W.D. Mich. 1998) (citing Rule & Regulations, Federal Reserve System, 61 Fed.Reg. 49,237, 49,242 (1996)) (noting that no regulatory or statutory tolerance

AO 72A
(Rev.8/82)

currently exists as to the numerical disclosure of the total of payments).

Washington Mutual makes no attempt to argue that inaccuracies as to the payment schedule or the total of payments resulted from the finance charge.  In fact, attorney John David ReVeal has testified that the disclosures of the finance charge were either accurate or well within the applicable tolerances. [Doc. No. 30](Affidavit of John ReVeal at ¶ 6).  This Court, therefore, cannot apply the "safe harbor" provision of § 1605(f)(1)(B) to protect Washington Mutual as to the overstatement of the challenged disclosures.

TILA liability, including the right to rescind the credit transaction, may result from even minute deviations from the disclosure requirements.  Shroder, 729 F.2d at 1380; Semar, 791 F.2d at 704.   This Court nevertheless observes that the challenged disclosures overstate the amounts required to be disclosed by relatively nominal amounts.  The payment schedule disclosure overstates the final payment of 360 payments by only $6.97.  Likewise, the total-of-payments disclosure overstates the actual total of payments by only $7.57.  Despite the relative insignificance of the overstatement, however, a material violation of the TILA disclosure requirements may arise, in the absence of any authority tolerating deviation, from the inaccurate disclosure of the final payment in the monthly payment schedule and the total of payments such as is alleged in this

14

case.  See In re Mannion, 231 B.R. 768, 773-74 (S.D. Cal. 1998) (holding that creditor violated TILA by inaccurately understating the number and total of payments in the disclosure statement). Washington Mutual, therefore, is not entitled to summary judgment as to these Truth-in Lending disclosures.

**C.   Was Plaintiff Given a Proper Disclosure of the Right to Rescind the Transaction?**

In its motion for summary judgment, Washington Mutual contends that Plaintiff's right-to-cancel notice was clearly and conspicuously provided to Plaintiff.  Washington Mutual contends that the right-to-cancel notice otherwise conformed to the form and content requirements of Regulation Z.   Washington Mutual further contends that the right-to-cancel notice contained Plaintiff's signature, dated August 26, 2000, acknowledging that she received notice on that date and that she failed to cancel the transaction by midnight of August 30, 2000.

In response, Plaintiff contends that she has presented evidence sufficient to establish a factual issue as to the actual closing date.  Plaintiff contends that evidence establishing the closing date at August 31, 2000, is sufficient to rebut any presumption created by Plaintiff's signature, dated August 26, 2000, as to the delivery of the right-to-cancel notice.  As such, Plaintiff contends that the right-to-cancel notice erroneously provided that the rescission period would expire on August 30, 2000.  Plaintiff further contends that, regardless of the closing date, the presence of the Certificate (stating that Plaintiff

15

does not rescind) at closing violated TILA by rendering unclear the disclosure of Plaintiff's rescission right.

Under TILA, a borrower may rescind a transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms ..., whichever is later ...." 15 U.S.C. § 1635(a). TILA requires that the lender deliver to the borrower two copies of the notice of her right to rescind. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1). The notice must "clearly and conspicuously disclose" information describing the transaction and the borrower's rights, including the date the rescission period expires." 12 C.F.R. § 226.23(b)(1). Several courts have found it to be a violation of TILA where the lender does not provide the borrower with the date the rescission period expires. See Semar, 791 F.2d at 703-04; Williamson v. Lafferty, 698 F.2d 767, 768-69 (5th Cir. 1983); see also Aquino v. Pub. Fin. Consumer Disc. Co., 606 F. Supp. 504, 507 (E.D. Pa. 1985).

The right-to-cancel notice in this case reflects Plaintiff's signature, along with the date August 26, 2000, acknowledging receipt. [Doc. No. 30](Ex. A at 21). This notice instructed Plaintiff that she had three business days to cancel the transaction from the latest of August 26, 2000, the date Plaintiff received the Truth-in Lending disclosure, or the date that she received notice of the right to cancel. [Doc. No. 30](Ex. A at 21). The right-to-cancel notice also instructed

AO 72A
(Rev.8/82)

Plaintiff that she may cancel the loan transaction by notifying the lender in writing no later than either midnight of August 30, 2000, or midnight of the third business day following the latest of the three events described above.  [Doc. No. 30](Ex. A at 21).

Washington Mutual argues that Plaintiff's signature on the Truth-in Lending disclosure and the right-to-cancel notice, each dated August 26, 2000, confirms that she received copies of both disclosures on that date.  Washington Mutual further points to the fact that each loan document in the Plaintiff's loan file was signed by Plaintiff and dated August 26, 2000.  [Doc. No. 30](Ex. A).  Accordingly, Washington Mutual asserts that Georgia's parole evidence rule bars Plaintiff from offering evidence to contradict or vary the terms of the relevant loan documents.

In Georgia, parol evidence may be used to explain any ambiguous term in an agreement when certain rules of construction fail to resolve the ambiguity.  <u>Livoti v. Aycock</u>, 263 Ga.App. 897, 902 (2003).  While parol evidence can be offered to explain an ambiguity, it is inadmissible "to contradict or vary the terms of a valid written instrument."  O.C.G.A. § 24-6-1.  In the instant case, the record reflects no ambiguity with regard to Plaintiff's signature, dated August 26, 2000, on the right-to-cancel notice, as well as on virtually every other loan document produced in connection with the credit transaction.  Therefore, in the absence of any ambiguity, Georgia's parole evidence rule

AO 72A
(Rev.8/82)

would appear to bar introduction of evidence seeking to contradict the date of the relevant signatures.

TILA is governed by federal law, however, and in a decision binding on this Court, the former Fifth Circuit held that a court cannot apply the parol evidence rule to derogate the purposes of TILA. Anthony v. Community Loan & Invert. Corp., 559 F.2d 1363, 1370 (5th Cir. 1977).[4] Following Anthony, a federal court in the Southern District of Georgia has held that, in the absence of a claim of illiteracy, fraud, or duress, "a borrower may not introduce contemporaneous evidence to contradict the express terms of the loan agreement." Dixon, 754 F.Supp. at 1571 (citing Anthony, 559 F.2d at 1369-70).

Plaintiff neither alleges nor contends that her signatures or the August 26, 2000, dates on the relevant documents were the product of illiteracy, fraud, or duress. Unlike the scenario presented in Dixon, however, Plaintiff does not seek to present contemporaneous evidence seeking to alter any express term of a contract. See Dixon, 754 F.Supp. at 1571 (parole evidence rule barred consideration of evidence that lender refused to accept automobile policy as single interest insurance, that lender required purchase of accidental death and dismemberment insurance, and that accidental death and dismemberment insurance was credit insurance). Rather, Plaintiff offers evidence only to

---

[4] Decisions of the Fifth Circuit rendered prior to October 1, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

AO 72A
(Rev.8/82)

rebut the presumption that Plaintiff's signature, dated August 26, 2000, acknowledged receipt of the right-to-cancel notice on that date.

This Court finds that the purposes of TILA, in providing liberal protections to borrowers, would be derogated by prohibiting Plaintiff from presenting evidence regarding the date of her receipt of the right-to-cancel notice. As discussed below, a borrower may present evidence to contest the actual delivery of a TILA disclosure. In re Bilal, 296 B.R. 828, 840 (Bankr. D. Kan. 2003). The Court finds that the purposes of TILA would be frustrated by the application of the parole evidence rule to preclude the allowance of evidence relating to the closing date and when Plaintiff received the right-to-cancel notice and other disclosures. Accordingly, this Court finds that the parol evidence rule will not bar Plaintiff from presenting such evidence.

Generally, written acknowledgment of receipt of any required disclosures under TILA creates no more than a rebuttable presumption of delivery thereof. See 15 U.S.C. § 1635(c); see also In re Bilal, 296 B.R. at 840; Stone v. Mehlberg, 728 F. Supp. 1341, 1354 (W.D. Mich. 1990); In re Underwood, 66 B.R. 656, 661-62 (Bankr. W.D. Va. 1986). Washington Mutual has raised the rebuttable presumption of delivery by pointing to Plaintiff's signed acknowledgment certifying her receipt of the right-to-cancel notice on August 26, 2000.

AO 72A
(Rev.8/82)

To rebut the presumption of delivery, Plaintiff has testified that she did not receive any documents, including the right-to-cancel notice, before August 31, 2000. (Pl. Dep. at 61-62). See also Schumacher v. Contimortgage Corp., 2000 WL 34030847 (N.D. Iowa 2000) (debtor's testimony that he did not receive statement sufficient to rebut presumption - citing cases). A borrower's sworn statement of non-delivery of documents rebuts the presumption of delivery created by the signed acknowledgment and constitutes sufficient evidence to raise a genuine issue of fact on the issue of delivery. In re Bilal, 296 B.R. at 840.

Further, Plaintiff testified in her deposition that the closing date was changed to August 31, 2000, because Mr. Douglas traveled out of town on August 26, 2000. (Pl. Dep. at 41, 43, 52, 53). Plaintiff submitted a copy of a Driver's Trip Record showing that Mr. Douglas was traveling to Tennessee on August 26, 2000. [Doc. No. 38](Ex. G). In addition, Plaintiff points to allegedly contemporaneous entries on a calendar maintained by her which corroborate the date change. (Pl. Dep. at 52)(Second Declaration of Plaintiff ("Pl. Second Decl.") at ¶ 5). Plaintiff further testified that she noticed that the loan documents were dated August 26, 2000, and not August 31, 2000, but that the closing attorney instructed her to use that date when signing the papers. (Pl. Dep. at 42, 53-55).

Considering the testimony and evidence cited by Plaintiff, this Court finds that Plaintiff has rebutted the presumption of

delivery of the right-to-cancel notice on August 26, 2000. Accordingly, a genuine issue of material fact exists regarding Washington Mutual's liability, pursuant to §§ 1635(c) and § 226.23(b)(1), in connection with the delivery of the right-to-cancel notice.

In addition, Plaintiff relies on the Eleventh Circuit's opinion in <u>Rodash</u> to argue that the presence of the Certificate at the closing violates TILA by rendering unclear the disclosure of Plaintiff's rescission right.  In <u>Rodash</u>, the lender provided notice of the right to rescind, but required the borrower to sign under a single paragraph that both acknowledged the receipt of the notice and simultaneously waived the right to rescind. <u>Rodash</u>, 16 F.3d at 1143-44.  The Eleventh Circuit Court of Appeals held that the notice violated TILA because it forced an immediate waiver of the three-day right to rescind. <u>Id.</u> at 1145-46.  Based on the totality of the circumstances, the Eleventh Circuit found that the lender had violated TILA's requirement of "clear and conspicuous" disclosure of the right to rescind.  <u>Id.</u> at 1146.

In the instant case, the loan file reflects that Plaintiff and her ex-husband signed the Certificate alongside the pre-printed date of August 31, 2000. [Doc. No. 30](Ex. F).  In that Certificate, Plaintiff and her ex-husband certified that they entered into a loan transaction on August 26, 2000. [Doc. No. 30](Ex. F).  The Certificate further stated that more than three

business days had elapsed since Plaintiff received the right-to-cancel notice concerning the subject loan transaction. [Doc. No. 30](Ex. F).

As discussed above, genuine issues of material fact exist as to whether Plaintiff received delivery of the right-to-cancel notice on August 26, 2000, or later. Plaintiff has presented evidence suggesting receipt of the right-to-cancel notice at the re-scheduled closing on August 31, 2000. If the closing took place on that date, then Plaintiff would have received delivery of the right-to-cancel notice and signed the Certificate on the same day. Delivery of the right-to-cancel notice on August 31, 2000, would have extended the three-day rescission period to midnight of September 3, 2000. However, neither the Certificate nor the right-to-cancel notice disclose the expiration of the three-day rescission period as occurring on September 3, 2000.

When construing the facts in favor of Plaintiff, the Certificate and the right-to-cancel notice potentially provided erroneous information as to Plaintiff's three-day window to exercise her right of rescission. Accordingly, there is a genuine issue of fact as to whether Plaintiff's right to rescind was clearly and conspicuously disclosed to her in accordance with TILA and Regulation Z. See 12 C.F.R. § 226.23(b)(1); Rodash, 16 F.3d at 147. This issue of fact precludes summary judgment for Defendant.

AO 72A
(Rev.8/82)

**D.    Was Plaintiff Given a Proper Section 32 Mortgage Loan Disclosure?**

In its summary judgment motion, Washington Mutual contends that Plaintiff was provided with a Section 32 Mortgage Loan Disclosure in compliance with HOEPA. Plaintiff responds that the Section 32 Mortgage Loan Disclosure fails to disclose certain mandated information in a conspicuous manner, as required by HOEPA. Plaintiff further contends that the Section 32 Mortgage Loan Disclosure provided an inaccurate disclosure of the monthly payment.

HOEPA requires the following two notices to be given in conspicuous type-size:

(A)   "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application[;]" and

(B)   "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it. If you do not meet your obligations under the loan."

15 U.S.C. § 1639(a); 12 C.F.R. § 226.32(c)(1).

The Section 32 Mortgage Loan Disclosure in the instant case provided both notices in all capital letters. [Doc. No. 38](Ex. A at 20). The Court finds that these notices are presented in a clear and conspicuous type-size which is set off from the text around them. At the time of the subject transaction in August, 2000, HOEPA disclosures were required to "be clear and conspicuous but need not be in any particular type or typeface nor presented in any particular manner." See 12 C.F.R. Part 226,

23

Supp. I, Official Staff Comment 226.32(c)(1).  This disclosure quotes the regulation verbatim and is consistent with the proportions of the type-size included in the Regulation Z model form in effect at the time of the subject loan transaction.  <u>See</u> 12 C.F.R. Part 226, Appendix H, Form H-16 (2000).  Accordingly, the Court finds no violation of TILA with respect to the HOEPA notice disclosures.

Plaintiff also contends that the Section 32 Mortgage Loan Disclosure fails to disclose in "conspicuous type size" the APR and monthly payment.  The applicable regulations require the APR and the monthly payment to be disclosed "in conspicuous type size."  12 C.F.R. § 226.32)(c)(2) and (c)(3).  The Section 32 Mortgage Loan Disclosure displayed the APR and the amount of the monthly payment in small text no larger than other non-mandated numbers or text.  [Doc. No. 30](Ex. A at 20).  In contrast to the HOEPA notices set off in all capital letters, the Court finds that nothing about the text of the APR or the monthly payment draws the attention of the consumer.  Accordingly, the Court finds a material TILA violation under HOEPA to exist with respect to the failure to disclose the APR and monthly payment in a conspicuous manner.

Next, Plaintiff contends that the Section 32 Loan Disclosure of $1,005.82 understated the monthly payment amount because it did not account for the mortgage insurance premium.  [Doc. No. 38](Ex. A at 20).  Because the mortgage insurance premiums cause

AO 72A
(Rev.8/82)

variations in the amount of the scheduled monthly payment, the HOEPA disclosure rules require disclosure of the regular monthly payment for each level.  12 C.F.R. Part 226, Supp. I, Official Staff Comment 226.32(c).[5]  Plaintiff contends, therefore, that the Section 32 Mortgage Loan Disclosure should have contained the actual monthly payment, including the mortgage insurance premium, for all payment levels.  The payment schedule reflects thirty-one levels in the loan transaction, which were not disclosed in the Section 32 Mortgage Loan Disclosure.  [Doc. No. 38](Ex. D).

An alternative disclosure rule for HOEPA transactions allows an abbreviated range of payments where a number of different payment amounts result from decreases in the monthly insurance premium that is part of the monthly payment.  See 12 C.F.R. Part 226, Supp. I, Official Staff Comment 226.32(c)(3); 12 C.F.R. Part 226, Supp. I, Official Staff Comment 226.32(g)(2).  In this case, however, the Section 32 Mortgage Loan Disclosure failed to disclose the range of actual payments.  Rather, the disclosure shows only one monthly payment figure, $1,005.82, which understates the actual initial payment in the transaction, $1,064.19, by $58.37.  [Doc. No. 38](Ex. A at 20); [Doc. No. 30](Ex. D).

---

[5]Regulation Z requires that the disclosure of the monthly payment amount include the mortgage insurance premium because it is part of the "finance charge," and because the monthly payment schedule must reflect all components of the finance charge.  See 12 C.F.R. § 226.4(b)(5); 12 C.F.R. Part 226, Supp. I, Official Staff Comment 226.18(g).

AO 72A
(Rev.8/82)

In summary, the Court finds that the HOEPA disclosure requirements appear to have been violated with respect to the failure to disclose the APR and monthly payment in a conspicuous manner and with respect to the failure to accurately disclose the monthly payment. Washington Mutual, therefore, is not entitled to summary judgment as to the HOEPA disclosures.

**E.   Did Plaintiff Receive the Section 32 Mortgage Loan Disclosure Three Days in Advance of the Transaction?**

The disclosures required under HOEPA, including the Section 32 Mortgage Loan disclosure, must be given "not less than three days prior to consummation of the transaction." 15 U.S.C. § 1639(b)(1). The consumer's right to rebut an acknowledgment of receipt under § 1635(c) includes the right to rebut an acknowledgment of receipt of a Section 32 disclosure notice. See Bryant v. Mortgage Capital Resource Corp., 197 F.Supp.2d 1357, 1363 (N.D. Ga. 2002).

Washington Mutual has raised the rebuttable presumption of delivery by citing Plaintiff's signed acknowledgment certifying receipt of the Section 32 Mortgage Loan Disclosure. Plaintiff, however, has rebutted this presumption with deposition testimony that she did not receive any documents, including the Section 32 disclosure, before the closing date of the transaction. (Pl. Dep. at 61-62). Further, the Section 32 Mortgage Loan Disclosure lacks a signature on the line at the bottom of the document certifying that it was "mailed ... [five] or more business days prior to the closing." [Doc. No. 30](Ex. A at 20). The failure

to certify such mailing to Plaintiff before closing supports Plaintiff's contention that FFG did not deliver the Section 32 Mortgage Loan Disclosure before the closing date.

Where Plaintiff has rebutted the presumption of delivery of the Section 32 Mortgage Loan Disclosure, a genuine issue of material fact remains as to whether Washington Mutual violated § 1635(c) in connection with the delivery of such disclosure. Washington Mutual, therefore, is not entitled to summary judgment as to the delivery of the HOEPA disclosure.

## VI.
### Conclusion

In light of the issues of fact regarding the alleged TILA and HOEPA disclosure violations discussed above, Plaintiff may be entitled to civil damages pursuant to 15 U.S.C. § 1640(a), and her right to rescission may be extended for up to three years after completion of the subject loan transaction.[6]  This Court, accordingly, hereby **RECOMMENDS** that Washington Mutual's motion

---

[6]Because Plaintiff may have an extended right to rescission, it is unnecessary for this Court to address Plaintiff's alternative argument in response to the summary judgment motion that she made a valid written demand for rescission during the three-day period following August 31, 2000.  For the sake of completeness, however, this Court finds that Plaintiff's alternative argument is without merit.  Regulation Z provides that in order to exercise the right to rescind, "the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 223.23.  The undisputed record reflects that Plaintiff never notified FFG or its subsequent assignees in writing of her desire to rescind the transaction until August 25, 2003, when she mailed her rescission demand letter to Washington Mutual.  [See Doc. No. 38](Pl. Brief at 2).

AO 72A
(Rev.8/82)

for summary judgment motion [Doc. No. 30] be **DENIED** in all respects.

     **SO REPORTED AND RECOMMENDED**, this <u>6th</u> day of January, 2005.


                                        <u>*S/ E. Clayton Scofield III*</u>
                                        E. Clayton Scofield III
                                        UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)

AO 72A
(Rev.8/82)